**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| ABIGAIL BUSLER, SUSANNE HANES, CARL KIRKSEY, MARUEEN LOVE, TAYLOR SIMMS, SEAN CHAMBERS, and CHANTEL YOUNG, individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> NISSAN NORTH AMERICA, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) COMPLAINT—CLASS ACTION <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

1.  Plaintiffs Abigail Busler, Susanne Hanes, Carl Kirksey, Marueen Love, Taylor Simms, Sean Chambers, and Chantel Young ("Plaintiffs") bring this action for themselves and on behalf of all current and former owners and lessees of Model Year ("MY") 2019-2022 Nissan Kicks, 2016 to 2022 Nissan Maxima, MY 2017-2022 Nissan Murano, MY 2019-2022 Infiniti[1] QX50, and MY 2019 to 2022 Nissan Rogue and Rogue Sport vehicles ("Class Vehicles" or "Vehicles") who purchased or leased the Class Vehicles in the United States or its Territories. Plaintiffs allege as follows:

### INTRODUCTION

2.  This is a class action concerning a failure to disclose material facts and a safety defect

3.  Nissan marketed and sold the Class Vehicles without disclosing that the Class Vehicles' Xtronic Continuously Variable Transmission ("CVT") was defective.

4.  Specifically, Plaintiffs are informed and believe, and based thereon allege, that

---

[1] Infiniti-branded vehicles are manufactured by Nissan.

the CVT contains one or more design and/or manufacturing defects. The CVT is defective in the following ways (collectively, the "CVT Defect"): it causes sudden, unexpected shaking and violent jerking (commonly referred to as "juddering" or shuddering") when drivers attempt to accelerate their vehicles; it causes the vehicle to lag or delay when the driver tries to accelerate, causing an unsafe, unpredictable acceleration; it exhibits a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds; it causes complete transmission failure in the middle of roadways[2] and it suffers catastrophic failure, necessitating replacement.

5. Nissan sold the Nissan-branded Class Vehicles with a 5-year, 60,000-mile powertrain warranty, and the Infiniti Class Vehicle with a 6-year, 70,000 mile powertrain warranty, that purport to cover the CVT. However, owners and lessees have complained that their CVTs failed and required replacement just outside the warranty period. As Class members have reported to the National Highway Traffic Safety Administration ("NHTSA"), Nissan's authorized dealerships are replacing transmissions both within, and just outside, the warranty period.

6. A sampling of the class members' complaints to NHTSA regarding the CVT Defect in the Class Vehicles are attached as Exhibit 1. These complaints illustrate the effect the CVT Defect has impacted on the people who purchased these Vehicles. Many report being unable to afford the repairs, typically in the thousands of dollars, required to get their Vehicles working again. Many discuss resulting difficulty in getting to work, as they rely on these Vehicles as their primary transportation. And, perhaps most troubling, many report the CVT

_____

[2] See, e.g., ¶ 7, *infra*, where a class member complained to NHTSA: "While driving my son and I to the store, the car stopped accelerating on a major highway with cars coming….The Nissan dealer said the CVT transmission needs to be replaced"; *see also* ¶¶ 8-9 (similar complaints), and Exhibit 1.

CLASS ACTION COMPLAINT

Defect manifesting on the highway or while turning across oncoming traffic, demonstrating that the CVT Defect poses a clear-cut safety work.

7.     Plaintiffs excerpt three examples below [emphasis added, grammar fixed for readability]. First, a 2016 Nissan Maxima owner reported the following to NHTSA:

**Date of Incident:**      **July 24, 2020**
**Date of Complaint:**   **July 27, 2020**
**NHTSA ID. No.:**        **11341736**

**COMPLAINT:**      While driving my son and I to the store, the car stopped accelerating on a major highway with cars coming. We [were] almost hit by a truck. When I applied the accelerator, the car stayed on 0 MPH, but the RPM moved. After about 5 seconds, the car began accelerating again. It also made a loud whining noise afterward. The Nissan dealer said the CVT transmission needs to be replaced. The car just hit 80,000 miles.

8.     Another 2016 Maxima owner reported to NHTSA:

**Date of Incident:**      **March 7, 2021**
**Date of Complaint:**   **March 11, 2021**
**NHTSA ID. No.:**        **11400377**

**COMPLAINT:**      …. **At 62,000 miles**, the transmission failed and the car would not drive. While heading home from work, I felt my entire vehicle begin to shake. The vehicle would not accelerate when I stepped on the gas and there was a 10 second delay before it began to move. Afterwards, it immediately jolted and vibrated rigorously. I decided to proceed with caution and pull my vehicle over before it caused me to get into an accident…. **I first thought that Nissan's notorious CVT problem had plagued my vehicle**…. After dropping the vehicle off at Route 23 Nissan, Nissan's consumers affairs department got back to me within 48 hours and informed me that **Nissan had no interest in rectifying the situation** because there was no recall and it was 'outside of the warranty period.'… Nissan technicians determined that the Xtronic CVT had a complete failure and needed to be replaced because they could not be repaired. **The repair cost is well over $4,000**.

9.     Another 2016 Maxima driver informed NHTSA:

**Date of Incident:**      **August 19, 2022**
**Date of Complaint:**   **September 8, 2022**
**NHTSA ID. No.:**        **11483414**

**COMPLAINT:**      ….The Nissan CVT transmission that is used in all Nissan models and **has a known history of premature failure**. **My 2016 Maxima has 48,000 miles and a completely failed transmission**…. **My two kids were in the car with all three times the accelerator stopped working while in motion due to the CVT transmission.** All happened in Chicago city traffic. Luckily, I was able to coast into a safe position each time, but I was lucky not to get stuck in the middle of intersection….Then eventually the electrical system shorted due to the transmission and the car was completely locked up, to the point of not being able to shift into neutral or move the steering wheel….

10.     Many other examples of Vehicles in addition to the Maxima are attached hereto as Exhibit 1.

11.     The CVT Defect is inherent in each Class Vehicle and was present at the time of sale.

12.     Plaintiffs are informed and believe that since 2015, if not earlier, Nissan has been aware that the CVT installed in the Class Vehicles would require frequent replacement, including replacements just outside of warranty, that the replacement transmissions installed would be equally defective as the originals, and that the CVT would cause the symptoms of the CVT Defect described above (juddering, lag when attempting to accelerate, hard deceleration, complete failure and other symptoms), and that the Class Vehicles' CVT would require frequent repair, yet Nissan continued to install the defective CVT. Moreover, Nissan not only refused to disclose the problem to owners and lessees, but it also actively concealed, and continues to conceal, its knowledge concerning the CVT Defect. Indeed, Nissan had been investigating the CVT's problems in its vehicles for many years before selling the first Class Vehicle in this lawsuit. For example, Nissan issued several Technical Service Bulletins ("TSBs") regarding the CVT Defect in predecessor vehicles in 2013 and before. Likewise, Nissan has entered into settlements of multiple cases regarding CVT Defects in predecessor vehicles. For example, in *Stringer, et al. v. Nissan North America, Inc*., Case No. 3:21-cv-00099 (M.D. Tenn.), Nissan issued a two-year, 24,000-mile extended warranty to cover the CVT Defect alleged here, including, 2014-2018 Rogue vehicles. Indeed, discovery will show that the 2019-2020 Nissan Rogue vehicles are equipped with virtually, if not identically, the same transmission as the CVT equipped in the 2014-2018 Rogue vehicles.

13.     Additionally, Nissan undertook affirmative measures to conceal CVT failures and other malfunctions through, among other things, TSBs applicable to the Class Vehicles in

this lawsuit, which Nissan issued to its authorized repair facilities only.

14.     The TSBs are discussed in detail *infra* and attached as Exhibit 2. However, by way of example, on April 7, 2016, Nissan issued TSB NTB 15-013b for the 2015-2016 Murano, the 2015-2016 Quest, the 2016 Maxima, and the 2014-2016 Rogue, among other vehicles. In the TSB, entitled "PROCEDURE TO CLEAN CVT TRANSMISSION FLUID COOLERS," Nissan admitted its knowledge of the following:

> **"Metal debris and friction material may become trapped in the radiator, cooling hoses, bypass valve or external CVT fluid cooler. This debris can contaminate the newly serviced transmission, control valve or torque converter. In severe cases this debris can block or restrict flow and may cause damage to the newly serviced CVT."**

15.     In many other TSBs, including others that Nissan had developed and released in early 2016, Nissan admitted that the Class Members were presenting their vehicles to Nissan dealerships reporting, *inter alia,* "**transmission judder (shake, shudder, single or multiple bumps or vibration)**." By the time these TSBs were released, Nissan had digested this information, developed a proposed repair procedure, tested it, drafted the TSB, and, finally, released it to its dealerships.

16.     Nissan had superior and/or exclusive knowledge of material facts regarding the CVT Defect as a result of its pre-production testing, design failure mode analysis, customer complaints made to NHTSA, and customer complaints made to dealers.

17.     As a result of Nissan's failure to disclose material facts regarding the CVT Defect to its customers, the Class has incurred significant and unexpected repair costs. Nissan's omission at the time of purchase of the CVT's marked tendency to fail just outside of warranty is material because no reasonable purchaser or lessee expects to spend thousands of dollars to repair or replace essential transmission components in the early years of owning their vehicles.

18.     The CVT Defect is also material to purchasers and lessees because it presents an unreasonable safety risk. Transmission malfunctions can impair any driver's ability to control his or her vehicle and greatly increase the risk of collision. For example, turning left across oncoming traffic in a vehicle with delayed and unpredictable acceleration is plainly unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, accelerate from stop light/sign, and accelerate onto highways or freeways. *See, e.g.,* ¶¶7-9, *supra,* and Exhibit 1 (complaints to NHTSA).

19.     Nissan's failure to disclose the defect has caused Plaintiffs and putative Class Members to lose use of their Vehicles and/or incur costly repairs that have conferred an unjust substantial benefit upon Nissan.

20.     Had Nissan disclosed the CVT Defect to Plaintiffs and Class Members, they would not have purchased the Class Vehicles, would have paid less for them, or would have required Nissan to replace or pay for the replacement of the defective CVT with a non-defective version before their warranty periods expired.

**THE PARTIES**

**Plaintiff Abigail Busler (Arizona)**

21.     Plaintiff Abigail Busler is a citizen of Arizona. In August 2020, She purchased her 2019 Nissan Kicks from Thoroughbred Nissan in Tucson, Arizona. Her vehicle was sold certified pre-owned with approximately 10,000 miles on the odometer.

22.     Passenger safety and reliability were significant factors in Plaintiff Busler's decision to purchase her vehicle. At the Nissan dealership, and prior to purchasing her car, Ms. Busler reviewed written materials regarding the vehicle, including the Nissan-authored window "Monroney" sticker. Ms. Busler also spoke with dealership personnel regarding the Vehicle before purchase.

CLASS ACTION COMPLAINT

23.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported such that Plaintiff Busler would have learned of the CVT Defect through her research, the materials she viewed at the dealership, or in her conversations with salespeople at the dealership before she purchased the Vehicle.

24.     Plaintiff Busler would not have purchased the Vehicle, or would have paid less for it, if she had learned or been made aware the CVT was defective.

25.     Per the warranty's requirements, Plaintiff Busler operated and maintained her vehicle at all times in a foreseeable manner, consistent with its intended use. Nevertheless, within approximately four months of purchase, Plaintiff Busler discovered that her vehicle was exhibiting a lack of motive power and delayed and insufficient acceleration. For example, under certain circumstances these symptoms rendered it difficult or impossible to accelerate in order to pass vehicles or join the flow of traffic under normal driving conditions.

26.     In January 2022, Plaintiff returned to Thoroughbred Nissan in Tucscon, Arizona, complaining of the above transmission symptoms. The dealership failed to perform any repairs.

27.     Plaintiff Busler's vehicle thus continues to exhibit the above symptoms; specifically, a lack of motive power and delayed and insufficient acceleration.

28.     At all times, Plaintiff Busler has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiff Susanne Hanes**

29.     Plaintiff Susanne Hanes is a citizen of California. In May 2020, Plaintiff Hanes purchased a 2018 Nissan Murano from Empire Nissan in Ontario, California, an authorized Nissan dealership. The vehicle had approximately 43,000 miles on the odometer at the time of

purchase. An Empire Nissan employee recommended Ms. Hanes return at 65,000 miles for transmission service free of charge.

30.    Passenger safety and reliability were significant factors in Plaintiff Hanes' decision to purchase her vehicle. At the Nissan dealership, and prior to purchasing her car, Ms. Hanes reviewed written materials regarding the vehicle, including the Nissan-authored window "Monroney" sticker. Ms. Hanes also spoke with dealership personnel regarding the vehicle before purchase and test drove her vehicle with a dealership salesperson before purchase.

31.    If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Hanes would have learned of the CVT Defect through her research, the materials she viewed at the dealership, or in her conversations with salespeople at the dealership before she purchased the vehicle.

32.    After she had driven an additional 7,000 miles, Plaintiff Hanes discovered that her vehicle was exhibiting hesitation when attempting to accelerate, jerking, and shuddering.

33.    Plaintiff Hanes returned to Empire Nissan complaining of these symptoms. However, no repairs were performed.

34.    Plaintiff Hanes' vehicle thus continues to exhibit the above symptoms; specifically, hesitation when attempting to accelerate, jerking, and shuddering.

35.    At all times, Plaintiff Hanes has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## Carl Kirksey

36.    Plaintiff Kirksey is a citizen of Alabama. In December 2021, Plaintiff Carl Kirksey purchased a used 2016 Nissan Maxima from Vroom, an automotive dealer headquartered in Texas. At the time of purchase there were approximately 48,000 miles on the odometer.

37.     Passenger safety and reliability were significant factors in Plaintiff Kirksey's

CLASS ACTION COMPLAINT

decision to purchase his vehicle. Before purchasing his vehicle, Carl Kirksey performed online research regarding the 2016 Nissan Maxima, including visiting the Vroom website and reviewing information about the vehicle. He also viewed two commercials regarding the Nissan Maxima.

38.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Kirksey would have learned of the CVT Defect through his research and the materials he viewed at the point of purchase before finalizing his purchase.

39.     Shortly after purchase, Plaintiff Kirksey's vehicle began to suddenly and repeatedly lose motive power, including on the freeway.

40.     In February 2022, with 48,896 miles on the odometer, Plaintiff Kirksey took his vehicle to Bondy's Nissan, an authorized Nissan dealership in Dothan, Alabama. The dealership examined Plaintiff Kirksey's vehicle and informed him that his CVT and alternator needed to be replaced. Mr. Kirksey had to pay $637 out of pocket for these repairs; the remainder was covered by the extended warranty that Mr. Kirksey had purchased.

41.     Despite this transmission replacement, Mr. Kirksey's vehicle continues to run rough and jerk.

42.     At all times, Plaintiff Kirksey has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Marueen Love**

43.     Plaintiff Love is a citizen of Illinois. In February 2020, Plaintiff Love purchased a used 2019 Nissan Rogue Sport from automotive dealer Carmax in Glendale, Illinois. The vehicle had approximately 10,000 on the odometer.

44.     Passenger safety and reliability were significant factors in Plaintiff Love's decision to purchase her vehicle. Before purchasing her vehicle, Plaintiff Love reviewed the Nissan-authored warranty booklet and Monroney window sticker. She also recalls viewing a Nissan commercial.

45.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Love would have learned of the CVT Defect through her research, the materials she viewed at the dealership, or in her conversations with salespeople at the dealership before she purchased the vehicle.

46.     By December 2021, Plaintiff Love's vehicle was exhibiting delayed acceleration, lack of power, and shaking. With approximately 20,000 miles on the odometer, Ms. Love presented her vehicle to her local Nissan dealership in Chicago, Illinois, complaining of the above transmission symptoms. The dealership downplayed her complaints and failed to diagnose any transmission problems or perform any repairs.

47.     Accordingly, Plaintiff Love's vehicle continues to exhibit delayed acceleration, lack of power, and shaking.

48.     At all times, Plaintiff Love has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Taylor Simms**

49.     Plaintiff Taylor Simms is an Ohio citizen who resides in Cincinnati, Ohio.

50.     In May 2021, Plaintiff Taylor Simms purchased a used 2019 Nissan Rogue Sport from Enterprise Car Sale in Cincinnati, Ohio. The vehicle had approximately 37,000 miles on the odometer.

51.      Passenger safety and reliability were significant factors in Plaintiff Simms' decision to purchase her vehicle. Before purchasing the vehicle, Plaintiff Simms researched the vehicle online extensively. At the dealership, Plaintiff Simms reviewed the vehicle's Nissan-authored warranty booklet and Monroney window sticker before purchase, and Plaintiff Simms spoke with a dealership salesperson regarding the vehicle.

52.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported

Case 3:22-cv-00769   Document 1   Filed 09/30/22   Page 10 of 66 PageID #: 10
CLASS ACTION COMPLAINT

such that Plaintiff Simms would have learned of the CVT Defect through her research, the materials she viewed at the dealership, or in her conversations with salespeople at the dealership before she purchased the vehicle.

53.     Within a few months of purchase, Plaintiff Simms discovered that her vehicle was jerking forward severely and exhibiting RPM anomalies.

54.     On or around March 12, 2022, with approximately 44,000 miles on the odometer, Plaintiff Simms presented her vehicle to Busam Nissan complaining of the above symptoms. The dealership failed to diagnose the problem and provided Mr. Simms no repairs.

55.     Accordingly, Plaintiff Simms' vehicle continues to exhibit severe forward jerking and RPM anomalies.

56.     At all times, Plaintiff Simms has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Sean Chambers**

57.     Plaintiff Sean Chambers is a New York citizen who resides in Lockport, New York.

58.     In April 2019, Sean Chambers' mother, Marie Chambers, purchased a 2019 Nissan Rogue new from West Herr Nissan, an authorized Nissan dealership in Lockport, New York. Plaintiff Chambers' mother passed away after the purchase, and Plaintiff Sean Chambers inherited the vehicle.

59.     Plaintiff Sean Chambers was heavily involved in the purchasing decision, and he assisted his mother through the process of choosing a vehicle and purchasing it. Passenger safety and reliability were significant factors in Plaintiff Sean Chambers' and his mother's decision to purchase the vehicle. Before purchasing the vehicle, Plaintiff Chambers' researched the vehicle online extensively. At the dealership, Plaintiff Chambers' mother spoke with a dealership salesperson regarding the vehicle and test drove the vehicle. Plaintiff Chambers also spoke with the same dealership salesperson regarding the Rogue and its features as well as his mother before the purchase was made.

CLASS ACTION COMPLAINT

60.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Chambers and his mother would have learned of the CVT Defect through their research, the materials viewed at the dealership, or in his conversations with dealership salespeople regarding the vehicle in which Plaintiff Chambers and his mother both engaged prior to making their purchasing decision.

61.     Shortly after purchase, Plaintiff Chambers discovered that the Rogue was exhibiting the sensation of gear slips, exhibiting lack of power and delayed acceleration.

62.     In late 2020, with approximately 12,500 miles on the odometer, Plaintiff Chambers brought his vehicle back to West Herr Nissan complaining of the above symptoms. The dealership tested the vehicle and verified, as recorded on Plaintiff Chambers' repair orders, "grinding noise at 5mph….noise heard from right side of CVT near transfer case." The dealership determined that the CVT transmission had failed and performed a CVT replacement. The dealership kept Plaintiff Chambers' vehicle for three months in order to conduct these repairs.

63.     Despite this transmission replacement, Plaintiff Chambers' vehicle continues to exhibit delayed acceleration and lack of power. Additionally, the vehicle has shifted into an improper gear, causing the RPMs to flare improperly, when Plaintiff Chambers' arm lightly touched the shifter.

64.     At all times, Plaintiff Chambers has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Chantel Young**

65.     Chantel Young is a citizen of Georgia. In April 2021, Plaintiff Young purchased a new 2021 Nissan Kicks from Tennison Nissan, an authorized Nissan dealership in Tiston, Georgia.

66.     Passenger safety and reliability were significant factors in Plaintiff Young's decision to purchase her vehicle. Before purchasing her vehicle, and at the Nissan dealership,

Case 3:22-cv-00769   Document 1   Filed 09/30/22   Page 12 of 66 PageID #: 12
CLASS ACTION COMPLAINT

Plaintiff Young reviewed the Nissan-authored Monroney window sticker and test drove a 2021 Nissan Kicks. She also spoke with the dealership sales personnel regarding the vehicle before purchase.

67.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Young would have learned of the CVT Defect through her research, the materials she viewed at the dealership, or in her conversations with salespeople at the dealership before she purchased the vehicle.

68.     Within a few months of purchase, Plaintiff Young discovered that her vehicle was jerking and exhibiting a skipping sensation when attempting to accelerate.

69.     In February 2022, with approximately 18,500 miles on the odometer, Plaintiff Young presented her vehicle to Tenneson Nissan complaining of the above symptoms. The dealership determined that the entire CVT assembly needed to be replaced and conducted those repairs.

70.     Despite this transmission replacement, Plaintiff Young's vehicle continues to run roughly.

71.     At all times, Plaintiff Young has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## JURISDICTION AND VENUE

72.     This is a class action.

73.     Defendant, Nissan North America, Inc. ("NNA" or "Nissan") is a corporation with its headquarters in the State of Tennessee. Nissan conducts business in all fifty states.

74.     Nissan has established sufficient contacts in this district such that personal jurisdiction is appropriate, and Nissan is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

CLASS ACTION COMPLAINT

75.    At all relevant times, Nissan was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in Tennessee and throughout the United States of America.

76.    As set forth below, members of the proposed Class are citizens of states different from the home state of Defendant.

77.    On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

78.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

79.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Nissan.'s principal place of business is in this judicial district, because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in and emanated from this judicial district, and because Defendant has caused harm to Class members residing in this District.

## FACTUAL ALLEGATIONS

80.    Nissan is known throughout the United States as a major manufacturer of automobiles and related products, which are sold under the Nissan and Infiniti brands.

81.    Nissan designed, manufactured, imported, distributed, and/or marketed the Class Vehicles in the United States, including in Tennessee and throughout the United States and its territories. Nissan also provides sales, repair, and maintenance services for the Class Vehicles through its nationwide network of authorized dealers and service providers.

82.     On information and belief, the only method Nissan makes available for the purchase of Class Vehicles is through its nationwide network of authorized dealers.

83.     The CVT is an automatic transmission that uses two variable-diameter pulleys with a steel belt running between them to change speed, instead of a gearbox and clutch system.  Rather than relying on the fixed gear ratios of the traditional automatic transmission, the pulleys can adjust their width to make the belt turn faster or slower, depending on the speed of the vehicle and the torque needed. The CVT thus "simultaneously adjusts the diameter of the 'drive pulley' that transmits torque from the engine and the 'driven pulley' that transfers torque to the wheels" to allow for an infinite number of gear ratios.[3]  In theory, the CVT chooses the gear ratio optimum for driving conditions.

84.     The CVT, allegedly offering more efficient power delivery and better fuel economy, is standard in the Class Vehicles.

85.     The illustration in figure one, below, depicts the way the CVT's belt and pulley system adjusts the gear ratio to change speed:



*Figure one – Xtronic CVT belt and pulley system*

86.     Owners and lessees complain that their vehicles take an inordinately long time to accelerate from a stop or low speed, exhibit a hard deceleration or "clunk" when drivers

---

[3] Nissan Motor Corporation, *XTRONIC CVT*, http://www.nissan-global.com/EN/TECHNOLOGY/OVERVIEW/cvt.html.

either slow down or accelerate at low speeds, shudder and shake or make a loud clunking or knocking sound when the CVT finally selects the appropriate gear ratio, and completely fail to accelerate. Owners and lessees also frequently complain of unusually high RPMs or a loud whining once they achieve speed, which exceeds their reasonable expectations for noise from the CVT. Finally, in addition to hesitations, slow response, and loud noises, the lifespan of the CVT in the Class Vehicles is unreasonably short.

87.     Nissan sold the Nissan-branded Class Vehicles with a 5-year, 60,000-mile powertrain warranty that purports to cover the CVT. Likewise, Nissan sold the Infiniti-branded Class Vehicles with a six-year, 70,000-mile powertrain warranty that purports to cover the CVT.  However, owners and lessees have complained that their CVTs failed and required replacement just outside the respective 60,000-mile / 70,000-mile warranty periods. As Class members have reported to the NHTSA, Nissan's authorized dealerships are replacing transmissions both within, and just outside, the 60,000-mile warranty period.

88.     The CVT Defect alleged is inherent in and the same for all Class Vehicles.

89.     On information and belief, dating back to at least 2013, Nissan was aware of material facts regarding the CVT Defect, but failed to disclose them to owners and lessees. As a result of this failure, Plaintiffs and Class Members have been damaged.

///

**The CVT Defect Poses an Unreasonable Safety Hazard**

90.     The CVT Defect poses an unreasonable safety hazard. Hesitations, slow/no responses, hard braking or catastrophic transmission failure impair drivers' control over their vehicles, which significantly increases the risk of accidents. For example, turning left across oncoming traffic in a vehicle with delayed and unpredictable acceleration is unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, brake slowly or accelerate from stop light/sign, and accelerate onto highways or freeways. *See*, *e.g.,* ¶¶7-9, *supra,* and Exhibit 1 (complaints to NHTSA).

**A.     Complaints Lodged with NHTSA**

91.     Federal law requires automakers like Nissan to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. See TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

92.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for customer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Nissan knew or should have known of the many complaints about the CVT Defect logged by NHTSA's Office of Defects Investigation ("ODI"), and the content, consistency, and large number of those complaints alerted, or should have alerted, Nissan to the CVT Defect.

93.     For years, owners of Nissan vehicles equipped with CVT transmissions including the Class Vehicles have publicly complained to the United States government about

the CVT Defect in Class Vehicles. The ODI is an office within NHTSA. ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways. All automobile manufacturers routinely monitor and analyze NHTSA complaints because this information is used in determining if a recall should be issued. *See* https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last visited Dec. 08, 2017). Indeed, automobile manufacturers are required by law to report any potential safety defects to the United States government.

94.     The complaints made to NHTSA and elsewhere online demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Nissan's awareness of the problems with the CVT and the Defect, including how dangerous they are for drivers. Attached as ***Exhibit 1*** are complaints made to NHTSA regarding the CVT Defect (spelling and grammar mistakes remain as found in the original). They are available at https://www.nhtsa.gov/recalls on NHTSA's "Safety Issues & Recalls" page.

### Nissan Had Superior and Exclusive Knowledge of the CVT Defect

95.     Nissan had superior and exclusive knowledge of the CVT Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

96.     Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased their respective Class Vehicles, and since 2015, if not earlier, Nissan knew about the CVT Defect through sources in its exclusive and/or superior knowledge, including pre-release testing data, early customer complaints to Nissan and its dealers who are their agents for vehicle repairs, testing conducted in response to those complaints, high failure rates and replacement part sales data, customer complaints to NHTSA (which Nissan

CLASS ACTION COMPLAINT

monitors), by developing technical service bulletins in an effort to address the CVT Defect, and through other aggregate data from Nissan dealers about the problem.

97.     Nissan is experienced in the design and manufacture of automobiles. As an experienced manufacturer, Nissan conducts tests, including pre-sale durability testing, on incoming components, including the Xtronic CVT, to verify the parts are free from defect and align with Nissan's specifications.[4] Thus, Nissan knew or should have known the CVT was defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

98.     Additionally, on information and belief, Nissan knew of the impact of this defect from the sheer number of reports received from dealerships. Nissan's customer relations department, which interacts with individual dealerships to identify potential common defects, has received numerous reports regarding the defect, which led to the release of the TSBs. Nissan's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

99.     Nissan's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles. It is Nissan's policy that when a repair is made under warranty the dealership must provide Nissan with detailed documentation of the problem and the fix employed to correct it. Dealerships have an incentive to provide detailed

---

[4] Akweli Parker, *How Car Testing Works*, HOWSTUFFWORKS.COM,
http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm
("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last viewed September 22, 2022).

CLASS ACTION COMPLAINT

information to Nissan, because they will be reimbursed for any repairs if the justification is sufficiently detailed.

100.    In fact, James ("Jim") Blenkarn, Nissan's Senior Manger, Systems Quality Improvement, has publicly confirmed Plaintiffs' allegations. Mr. Blenkarn, in response to a question "On how Nissan monitors quality after a vehicle is launched" stated:

> "For the first six months, sometimes longer, of every new product, we have a team that focuses strictly on the product and examines every claim that comes in for that vehicle model. Our engineers have to target reporting something if it is a 0.5 incident rate. That's our threshold."[5]

101.    Nissan acknowledged the CVT Defect through issuing Technical Service Bulletins to its authorized dealerships. See **Exhibit 2.**

102.    On March 31, 2016, Nissan issued Technical Service Bulletin ("TSB") NTB15-015e for the 2016 Maxima and the 2015-2016 Murano, among other CVT-equipped Nissan vehicles.   Nissan entitled the TSB "PATHFINDER, QUEST, MURANO, MAXIMA, ALTIMA V6; CVT JUDDER AND DTC P17F0 OR P17F1 STORED." This campaign was issued to address "transmission judder (shake, shudder, single or multiple bumps or vibration)" in the "applied transmission: CVT." The TSB addressed two diagnostic trouble codes that Nissan had developed and later discovered were activating in the CVT-equipped vehicles: P17F0 (CVT_Judder (T/M INSPECTION)) and P17F1 (CVT_JUDDER (C/U INSPECTION)). The bulletin also acknowledged that, by the time of this TSB's March 2016 release, Nissan had developed another bulletin, NTB15-041, entitled "Enhanced Diagnostic Logic for CVT Judder," in which a software change had been developed to address CVT Judder.

---

[5] "5 Minutes with… Jim Blenkarn, senior manager, systems quality improvement, Nissan North America" Richard Truett, April 16, 2018 *Automotive News*. http://www.autonews.com/article/20180416/RETAIL05/180419990/5-minutes-with-jim-blenkarn-senior-manager-systems-quality

CLASS ACTION COMPLAINT

103. On March 31, 2016, Nissan also issued Technical Service Bulletin NTB12-103c. Nissan issued this TSB to its dealership to make Transmission Control Module ("TCM") calibration data available that Nissan had developed for the instances in which the CVTs, the CVT control valves, or the TCMs were being replaced. This TSB applied to the 2015-2016 Murano, the 2016-2016 Quest, the 2014-2015 Rogue, and the 2016 Maxima, among other CVT-equipped Nissan vehicles.

104. On April 5, 2016, Nissan issued TSB NTB15-014b for the 2015 Quest, the 2015 Murano, and the 2016 Maxima, among other CVT-equipped Nissan vehicles. This TBS was entitled "ENHANCED DIAGNOSTIC LOGIC FOR CVT JUDDER." The TSB provided repair procedures to dealership to address "The customer reports a transmission judder (shake, shudder, single or multiple bumps or vibration."

105. On April 7, 2016, Nissan issued TSB NTB 15-013b for the 2015-2016 Murano, the 2015-2016 Quest, the 2016 Maxima, and the 2014-2016 Rogue, among other vehicles. In the TSB, entitled "PROCEDURE TO CLEAN CVT TRANSMISSION FLUID COOLERS," Nissan admitted its knowledge of the following:

> **"Metal debris and friction material may become trapped in the radiator, cooling hoses, bypass valve or external CVT fluid cooler. This debris can contaminate the newly serviced transmission, control valve or torque converter. In severe cases this debris can block or restrict flow and may cause damage to the newly serviced CVT."**

106. On May 6, 2019, Nissan released TSB NTB19-040 for the 2018-2019 Kicks. The TSB was entitled "2018-2019 KICKS; MIL ON WITH DTC P0776 AND MAY HAVE HESITATION AND/OR LACK OF POWER." In the TSB, Nissan admitted that "The vehicle may also hesitate and/or have reduced power." Nissan's prescribed remedy was replacement of the entire CVT assembly and transaxle or the control valve. Nissan released multiple

CLASS ACTION COMPLAINT

amended versions of this TSB, including one on August 16, 2019 that noted several diagnostic trouble codes that required CVT assembly replacements or control valve replacements, and another on September 29, 2021, that included diagnostic trouble codes such as "CVT JUDDER, "FLUID PRESS SEN," "CLUTCH A PRESSURE," "AUXILIARY GEARBOX," AND "TORQUE CONVERTER." If any one of the list of fifteen CVT-related trouble codes activated in a class member's vehicle, Nissan admitted that either the entire CVT assembly needed to be replaced, or the control valve needed to be replaced.

107. On October 29, 2019, Nissan released TSB NTB18-059a, entitled "KICKS, SENTRA, AND VERSA; CVT FLUID LEAK SERVICE INFORMATION." The TSB applied to the 2018-2019 Kicks, among other CVT-equipped Nissan vehicles. In the TSB, Nissan admitted that the CVTs were exhibiting fluid leaks and that these fluid leaks were subject to being diagnosed incorrectly by the dealerships, leading to incorrect parts replacements such as oil pan gaskets, axle seals, and other parts. In response, Nissan directed its dealerships to first check for leakage around the CVT fluid charging pipe and to inspect and replace the O-ring if defective:

> "CVT related fluid leaks may be diagnosed incorrectly upon initial inspection, causing incorrect parts replacement such as oil pan gaskets, axle seals, etc. To help reduce/eliminate the possible return of an Applied Vehicle, first check for leakage around the CVT fluid charging pipe. When leakage is determined to be coming from the base of the CVT fluid charging pipe, remove it to inspect, and if necessary, replace the O-ring (see PARTS INFORMATION on the last page)."

108. On August 27, 2020, Nissan released TSB NTB20-060, applicable to the 2018-2019 Kicks. In the TSB, Nissan described the condition as: "The customer reports a transmission judder (shake, shudder, single or multiple bumps or vibration), hesitation on acceleration, lack of power, or RPM flare." In the TSB, Nissan notified its dealership that it had established a new diagnostic trouble code to "enhance the diagnostic process" by

CLASS ACTION COMPLAINT

"monitor[ing] conditions in the CVT while the customer is operating their vehicle in their usual daily drive pattern." Accordingly, Nissan directed its dealerships to reprogram the vehicles' Transmission Control Modules.

109. On December 23, 2020, Nissan released TSB ITB20-030. In the TSB, which applied to the 2019-2020 QX50 with tow package, Nissan notified its dealerships that it had developed a repair procedure for the following conditions: "**CVT fluid is leaking from the upper CVT fluid cooler hose, at the CVT cooler**" and "**The upper CVT fluid cooler hose has become detached while driving.**" Nissan also referenced additional CVT fluid leaks, noting "If CVT fluid is leaking from any other location, this bulletin does not apply. Refer to the ESM for further diagnostic and repair information."

110. Discovery will show that each TSB issued by Nissan was approved by manager, directors, and/or executives at Nissan. Therefore, discovery will show that Nissan's managers, directors, and/or executives knew, or should have known, about the CVT Defect, but refused to disclose the CVT Defect to prospective purchaser and owners of the Class Vehicles, and/or actively concealed the CVT Defect.

111. The existence of the CVT Defect is a material fact that a reasonable purchaser or lessee would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiffs and other Class Members known that the Class Vehicles were equipped with transmission subject to premature failure, they would have paid less for the Class Vehicles or would not have purchased or leased them.

112. Reasonable purchasers and lessees, like Plaintiffs, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiffs and Class Members further reasonably expect that Nissan will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose

CLASS ACTION COMPLAINT

any such defects to its customers when it learns of them. They did not expect Nissan to fail to disclose the CVT Defect to them and to continually deny it.

## Nissan Has Actively Concealed the CVT Defect

113.    Despite its knowledge of the CVT Defect in the Class Vehicles, Nissan actively concealed the existence and nature of the defect from Plaintiffs and Class Members. Specifically, Nissan failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)    all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the CVT;

(b)    that the Class Vehicles, including the CVT, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c)    that the Class Vehicles and the CVT were defective, despite the fact that Nissan learned of such defects as early as 2013.

114.    When customers present their Class Vehicles to an authorized Nissan dealer for CVT repairs, rather than repair the problem under warranty, Nissan dealers either inform customers that their Vehicles are functioning properly or conduct repairs that merely mask the CVT Defect.

115.    Nissan has caused Plaintiffs and Class Members to expend money and/or time at its dealerships to diagnose, repair or replace the Class Vehicles' CVT and/or related components, despite Nissan's knowledge of the CVT Defect.

## Nissan Has Unjustly Retained a Substantial Benefit

116.     On information and belief, Plaintiffs allege that Nissan unlawfully failed to disclose the alleged defect to induce them and other putative Class Members to purchase or lease the Class Vehicles.

CLASS ACTION COMPLAINT

117. Plaintiffs allege further that Nissan thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiffs'.

118. As discussed above, therefore, Plaintiffs allege that Nissan unlawfully induced them to purchase their respective Class Vehicles by concealing a material fact (the defective CVT) and that they would have paid less for the Class Vehicles, or not purchased them at all, had they known of the defect.

119. Accordingly, Nissan's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that deceived customers should be disgorged.

## CLASS ACTION ALLEGATIONS

120. Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

121. The Class and Sub-Class are defined as:

**Class**: All current and former owners and lessees of any MY 2019-2022 Nissan Kicks, MY 2016 to 2022 Nissan Maxima, MY 2018-2022 Nissan Murano, MY 2019-2022 Infiniti[6] QX50, and MY 2019 to 2022 Nissan Rogue and Rogue Sport vehicles equipped with a Continuously Variable Transmission ("Class Vehicles") who purchased or leased the vehicle in the United States or its Territories. (the "Nationwide Class" or "Class").

**California Sub-Class**: All members of the Nationwide Class who purchased or leased their vehicles in the State of California.

**CLRA Sub-Class**: All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

---

[6] Infiniti-branded vehicles are manufactured by Nissan.

CLASS ACTION COMPLAINT

**Arizona Sub-Class**: All members of the Nationwide Class who purchased or leased their Class Vehicles in the state of Arizona.

**Alabama Sub-Class**: All members of the Nationwide Class who purchased or leased their Class Vehicles in the state of Alabama.

**Illinois Sub-Class**: All members of the Nationwide Class who purchased or leased their Class Vehicles in the state of Illinois.

**New York Sub-Class:** All members of the Nationwide Class who purchased or leased their Class Vehicles in the state of New York.

**Ohio Sub-Class**: All members of the Nationwide Class who purchased or leased their Class Vehicles in the state of Ohio.

**Georgia Sub-Class**: All members of the Nationwide Class who purchased or leased their Class Vehicles in the state of Georgia.

122. Excluded from the Class and Sub-Classes are: (1) Nissan, any entity or division in which Nissan has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

123. <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Nissan's possession, custody, or control, as well as from records kept by the Departments of Motor Vehicles of the various states.

CLASS ACTION COMPLAINT

124.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Nissan.  The representative Plaintiffs, like all Class Members, has been damaged by Nissan's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective CVT and/or its components.  Furthermore, the factual bases of Nissan's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

125.    <u>Commonality</u>:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually.  These common legal and factual issues include the following:

(a)    Whether Class Vehicles suffer from defects relating to the CVT;

(b)    Whether the defects relating to the CVT constitute an unreasonable safety risk;

(c)    Whether Nissan knows about the defects pertaining to the CVT and, if so, how long Nissan has known of the defects;

(d)    Whether the defective nature of the CVT constitutes a material fact;

(e)    Whether Nissan has a duty to disclose the defective nature of the CVT to Plaintiffs and Class Members;

(f)    Whether Plaintiffs and the other Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

(g)    Whether Nissan knew or reasonably should have known of the defects pertaining to the CVT before it sold and leased Class Vehicles to Class Members;

(h)    Whether Nissan should be declared financially responsible for notifying

CLASS ACTION COMPLAINT

the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective CVT and/or its components;

(i) Whether Nissan is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective CVT and/or its components;

(j) Whether Nissan breached the implied warranty of merchantability.

126. Adequate Representation:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions involving automobiles, and they intend to prosecute this action vigorously.

127. Predominance and Superiority:  Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Nissan's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Nissan's misconduct.  Absent a class action, Class Members will continue to incur damages, and Nissan's misconduct will continue without remedy or relief.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

# FIRST CLAIM FOR RELIEF

## (Breach of Express Warranty)

### On behalf of the Class and the California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia Subclasses and their Named Representatives

128.    Plaintiffs bring this claim individually and on behalf of the Class and the California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia subclasses.

129.    Plaintiffs incorporate the preceding allegations as if fully set forth herein.

130.    Each Class Vehicle sold by Nissan included an express Warranty that covered, in part, the transmission and warranted that it would repair or replace any defects in materials and workmanship in the Class Vehicles.

131.    Nissan provided all purchasers and lessees of the Class Vehicles with a written New Vehicle Limited Warranty that "begins on the date the vehicle is delivered to the first retail buyer or put into use, whichever is earlier." Under the Warranty's Powertrain Coverage, Nissan expressly warranted that the Warranty "covers any repairs needed to correct defects in materials or workmanship." The Warranty's Powertrain Coverage covers the Nissan-branded Class Vehicles for 60 months or 60,000 miles, whichever comes first, and covers the Infiniti-branded Class Vehicles for six years or 70,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under its Warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover and housing, A/T cooler, and electronic transmission controls."

132.    Nissan maintains a full-time Quality Engineer for "Total Customer Satisfaction," at its headquarters near Nashville, Tennessee, whose responsibilities include analysis of field data (warranty, JD Power, IQS, etc.) to identify priority issues to be addressed, report quality results and action plans to executive management, perform static and dynamic evaluations of vehicle quality, and incorporate feedback from current model quality

into the new product development process. The Quality Engineer reports to the Office of the Overseas Chief Quality Engineer (OCQE).

133.    In addition, Nissan maintains a full-time Quality Process Engineer at its headquarters near Nashville, Tennessee, whose responsibilities are to analyze warranty data and reduce warranty claims and develop and present solutions to field concerns in formal reviews with executive management.

134.    Through its personnel, whose responsibilities include monitoring defects, analyzing warranty and field data, and reporting findings to executive management, as well as through its highly developed internal information and reporting systems, Defendant has been made aware of the defective CVT for years, but failed to notify Plaintiffs and members of the proposed Class and Subclasses during the warranty period and failed to repair the defect free of charge.

135.    Plaintiffs also gave notice to Nissan of their vehicles' defect through its dealers and agents and through its customer service division, and gave Nissan a chance to repair the defect under the express warranty. Nissan was also on notice of the defect by virtue of the NHTSA and other complaints set forth herein, as well as its internal investigation of the defect in Class Vehicles as early as 2015.

136.    Nissan breached its warranties by offering for sale and selling defective vehicles that were by construction defective and unsafe and refusing to recognize or permanently repair the defect, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

137.    Nissan's warranty to repair the Class Vehicles fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs, the Class, and the Subclasses whole because Nissan has been unable to repair the defect or has refused to replace the transmission with a different, functional transmission. As Nissan's Technical Service Bulletins demonstrate, Nissan is incapable of repairing the defect, despite repeated attempts to do so.

CLASS ACTION COMPLAINT

138.     Accordingly, Plaintiffs, the Class, and the Subclasses are not limited to the limited warranty of "repair" and Plaintiffs, the Class, and the Subclasses seek all remedies allowed by law.

139.     Plaintiffs and the Class or, in the alternative, the California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia Subclasses seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, restitution, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all class, and appropriate equitable relief including injunctive relief, a declaratory judgment, and a court order enjoining Nissan's wrongful acts and practices, and any other relief to which Plaintiffs and the Class or the California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia Subclasses may be entitled.

## SECOND CLAIM FOR RELIEF

### (Breach of Implied Warranty)

### On behalf of the Class, or Alternatively, California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia Subclasses and their Named Representatives

140.     Plaintiffs bring this claim individually, and on behalf of the Class and in the alternative, the California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia Subclasses

141.     Plaintiffs hereby incorporate the preceding allegations as if fully set forth herein.

142.     Nissan impliedly warranted that the Class Vehicles, which it designed, manufactured, sold, or leased to Plaintiffs and the Class or Subclasses were merchantable, fit and safe for their ordinary use, not otherwise injurious to purchasers and lessees, and equipped with adequate safety warnings.

143.     Because the Class Vehicles are equipped with a defective transmission system, the vehicles purchased or leased and used by Plaintiffs and the Class or Subclasses are unsafe,

unfit for their ordinary use when sold, and not merchantable. Nissan breached the implied warranty of merchantability, as stated in the Uniform Commercial Code, by selling or leasing Class Vehicles to Plaintiffs and the Class or Sub-Class Members.

144.    Nissan breached the implied warranty of merchantability, pursuant to Ohio common law, by selling or leased Class Vehicles to Plaintiff Simms and Members of the Ohio Subclass. Because Plaintiff Simms and Members of the Ohio Subclass are remote purchasers who seek purely economic losses, Plaintiff Simms and the Members of the Ohio Subclass bring this claim for breach of implied warranty in tort.

145.    Plaintiffs and the Class or Subclasses seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, restitution, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and appropriate equitable relief including injunctive relief, a declaratory judgment, and a court order enjoining Nissan's wrongful acts and practices and any other relief to which Plaintiffs and the Class or Subclasses may be entitled.

## THIRD CLAIM FOR RELIEF

**(Breach of Express and Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.))**

**On behalf of the Class, or Alternatively, the California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia Subclasses and their Named Representatives**

146.    Plaintiffs bring this claim individually and on behalf of the Class or, in the alternative, the California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia Subclasses.

147.    Plaintiffs hereby incorporate the preceding allegations as if fully set forth herein.

148.    The Class Vehicles are a "consumer product" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

149.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

150.   Nissan is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

151.   Every Class Vehicle is backed by a New Vehicle Limited Warranty ("Warranty"). Nissan's Warranty covers any repairs needed to correct defects in materials or workmanship of covered parts. In the Nissan-branded Class Vehicles, the basic coverage period lasts 36 months or 36,000 miles, whichever comes first, and the powertrain coverage lasts 60 months or 60,000 miles, whichever comes first. In the Infiniti-branded Class Vehicles, the basic coverage period lasts four years or 60,000 miles, whichever comes first, and the powertrain coverage lasts six years or 70,000 miles, whichever comes first. The powertrain coverage specifically applies to the engine, transmission and transaxle, drivetrain, and restraint system. Nissan explicitly extended the Warranty to all purchasers, lessees, and subsequent purchasers and lessees of Class Vehicles throughout the United States. The Warranty assured consumers that Nissan would repair any defect in materials or workmanship under normal use.

152.   On information and belief, Nissan breached the express warranties by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

153.   Plaintiffs gave Nissan notice of its breach by presenting their Vehicles to Nissan dealerships for repairs that were not made.

CLASS ACTION COMPLAINT

154. However, Plaintiffs were not required to notify Nissan of the breach and/or were not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

155. Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the Vehicles pursuant to the express warranty, Nissan falsely informed Cclass Members that there was no problem with their Vehicle, performed ineffective software flashes, or replaced defective components in the CVT Transmissions with equally defective components, without actually repairing the Vehicles.

156. Moreover, Nissan impliedly warranted that the Class Vehicles were of merchantable quality and fit for use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their CVT were manufactured, supplied, distributed, and/or sold by Nissan would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their CVT would be fit for their intended use while the Class Vehicles were being operated.

157. Violating the applicable implied warranties, the Class Vehicles and their CVTs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design of their CVT.

158. Nissan's breach of express and implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

159. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or

CLASS ACTION COMPLAINT

value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

160.     Nissan has been afforded a reasonable opportunity to cure its breaches, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the CVT.

161.     As a direct and proximate cause of Nissan's breach of express and implied warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial.  Nissan's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

162.     As a result of Nissan's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

## FOURTH CLAIM FOR RELIEF

**(Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq*.)**

**On behalf of Plaintiff Susanne Hanes and the California Subclass**

163.     Plaintiff Susanne Hanes brings this claim individually and on behalf of the California Subclass.

164.     Plaintiff Hanes hereby incorporates the preceding allegations as if fully set forth herein.

165.     Plaintiff Hanes and California Subclass Members are "buyers" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

166.     Nissan is a "manufacturer" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(j).

167.     Plaintiff's and the class members' vehicles are "consumer goods" within the

CLASS ACTION COMPLAINT

meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

168.    Nissan's Warranty is an "express warrant[y]" within the meaning of Song-Beverly Consumer Warranty Act, California Civil Code § 1791.2.

169.    At all relevant times, Nissan manufactured, distributed, warranted, and/or sold the Class Vehicles. Nissan knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

170.    Nissan provided an implied warranty to Plaintiff Hanes and the California Subclass Members, which warranted that the Class Vehicles, including the components parts, are merchantable and fit for the ordinary purposes for which they were sold. However, *inter alia*, the transmissions in the Class Vehicles suffer from an inherent defect at the time of sale and, thereafter, are not fit for their ordinary purpose of providing reasonably safe and reliable transportation.

171.    Nissan impliedly warranted that the Class Vehicles are of merchantable quality and fit for such use. The implied warranty includes, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Nissan are safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles are fit for their intended use.

172.    Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff Hanes and California Subclass Members with reliable, durable, and safe transportation. Instead, the transmissions in Class Vehicles are defective and suffer from transmission failures that compromise the reliability, durability, and safety of Class Vehicles.

173.    As a result of Nissan's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles have suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the transmission defect, Plaintiff Hanes and California Subclass Members were harmed and suffered actual damages in that the Class Vehicles' transmission are substantially certain to fail or have failed before their

CLASS ACTION COMPLAINT

expected useful life has run. The transmission failures create a high risk of accidents, injuries, and even death.

174.    Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of California Civil Code §§ 1792 and 1791.1, *et seq*.

175.    Plaintiff Hanes and the California Subclass seek full compensatory damages allowable by law, attorneys' fees, costs, the repair or replacement of all Class Vehicles the refund of money paid to own or lease all Class Vehicles, and any other relief to which Plaintiffs, the California Subclass may be entitled.

### FIFTH CLAIM FOR RELIEF

### (Violation of California's Consumers Legal Remedies Act,

### California Civil Code §§ 1750, et seq.)

### On behalf of the Plaintiff Susanne Hanes and the CLRA Subclass

176.    Plaintiff Susanne Hanes brings this claim individually and on behalf of the CLRA Subclass.

177.    Plaintiff Hanes hereby incorporates the preceding allegations as if fully set forth herein.

178.    Defendant Nissan North America, Inc. is a "person" as defined by California Civil Code § l761(c).

179.    Plaintiff Hanes and the CLRA subclass members are "consumers" within the meaning of California Civil Code §1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

180.    By failing to disclose and concealing the defective nature of the transmissions from Plaintiff Hanes and the prospective Class and CLRA Subclass Members, Nissan violated California Civil Code § 1770(a), as they represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the

Case 3:22-cv-00769   Document 1   Filed 09/30/22   Page 37 of 66 PageID #: 37
CLASS ACTION COMPLAINT

Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

181.     Nissan's unfair and deceptive acts or practices occurred repeatedly in Nissan's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

182.     Nissan knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively manufactured or contained defective materials, and were not suitable for their intended use and as a result of the defect known to Nissan as alleged herein, created an unreasonable safety risk for class members.

183.     As a result of their reliance on Nissan's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the transmission defect, Plaintiff Hanes and the Class and California Subclass Members were harmed and suffered actual damages in that the Class Vehicles' transmission or transmission components are substantially certain to fail or have failed before their expected useful life has run.

184.     Nissan had a duty to Plaintiff Hanes and the Class and California Subclass Members to disclose the defective nature of the transmissions and/or the associated repair costs because:

185.     Nissan was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

186.     Plaintiff Hanes and the Class and California Subclass Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

187.     Nissan knew that Plaintiff Hanes and the Class and California Subclass Members could not reasonably have been expected to learn of or discover the safety defect.

188.     In failing to disclose the defective nature of the transmissions, Nissan knowingly and intentionally omitted material facts and breached its duty not to do so.

189. The facts about the transmission defect that Nissan concealed from or failed to disclose to Plaintiff Hanes and the Class and California Subclass Members are material in that a reasonable purchaser or lessee would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less for them. Had Plaintiff Hanes and the Class and California Subclass Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

190. Plaintiff Hanes and the Class and California Subclass Members are reasonable purchasers and lessees who do not expect the transmissions installed in their vehicles to exhibit the aforementioned transmission failures.

191. As a result of Nissan's conduct, Plaintiff Hanes and the Class and California Subclass Members were harmed and suffered actual damages in that the Class Vehicles experienced and may continue to experience the aforementioned transmission failures. As a direct and proximate result of Nissan's unfair or deceptive acts or practices, Plaintiff Hanes and the Class and California Subclass Members suffered and will continue to suffer actual damages.

192. Plaintiff Hanes sent Nissan a letter on August 16, 2022 by United States Postal Service Certified Mail that provided notice of its violations of the CLRA pursuant to California Civil Code § 1782(a). Nissan has failed to provide appropriate relief for their violations of the CLRA within thirty days, as required by the statute.

193. Therefore, Plaintiff Hanes and the California Subclass Members, or, alternatively, the Class Members, seek full compensatory and punitive damages allowable by law, the repair or replacement of all Class Vehicles the refund of money paid to own or lease all Class Vehicles monetary, and injunctive and equitable relief, along with any other remedies available by law.

CLASS ACTION COMPLAINT

**SIXTH CLAIM FOR RELIEF**

**(Violation of California's Business & Professions Code § 17000, *et seq*.)**

**On behalf of the Plaintiff Hanes and the California Subclass)**

194. Plaintiff Susanne Hanes brings this claim individually and on behalf of the California Subclass.

195. Plaintiff Hanes hereby incorporates the preceding allegations as if fully set forth herein.

196. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

197. Reasonable purchasers and lessees, such as Plaintiff Hanes and the Class and California Subclass Members, do not expect their transmissions to exhibit problems such as shaking, juddering, shuddering, jerking, delayed acceleration, and, eventually, complete transmission failure.

198. Nissan knew the Class Vehicles and their transmissions suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use and created an unreasonable safety risk.

199. In failing to disclose the defects with the transmission, Nissan knowingly and intentionally concealed material facts and breached its duty not to do so.

200. By their conduct, Nissan has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

201. Nissan had a duty to Plaintiff Hanes and the Class and California Subclass Members to disclose the defective nature of the Class Vehicles and their transmissions because:

      a. Nissan was in a superior position to know the true facts about the safety defect in the Class Vehicles' transmissions;

      b. Nissan made partial disclosures about the quality of the Class Vehicles

without revealing the defective nature of the Class Vehicles and their transmissions; and

   c. Nissan actively concealed the defective nature of the Class Vehicles and their transmissions from Plaintiff Hanes and the Class and California Subclass.

202. The facts regarding the transmission defect that Nissan concealed from or failed to disclose to Plaintiff Hanes and the Class and California Subclass are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had Plaintiff Hanes and the Class and California Subclass Members known that the Class Vehicles' transmissions were defective and posed a safety hazard, then Plaintiff Hanes and the Class and California Subclass Members would not have purchased or leased Class Vehicles equipped with transmissions, or would have paid less for them.

203. Nissan continues to conceal the defective nature of the Class Vehicles and their transmissions even after Class Members began to report problems.

204. Nissan's conduct was and is likely to deceive customers. Nissan's unfair or deceptive acts or practices occurred repeatedly in Nissan's trade or business and were capable of deceiving a substantial portion of the purchasing public.

205. Nissan's acts, conduct and practices were unlawful, in that they constituted:

   a. Violations of the California Consumer Legal Remedies Act;

   b. Violations of the Song-Beverly Consumer Warranty Act;

   c. Violations of the express warranty provisions of California Commercial Code section 2313; and

   d. Violations of the other causes of action set forth in this Complaint.

206. As a result of their reliance on Nissan's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the transmission defect,

CLASS ACTION COMPLAINT

Plaintiff Hanes and the Class and California Subclass Members were harmed and suffered actual damages in that the Class Vehicles' transmission and/or transmission components are substantially certain to fail before their expected useful life has run.

207. As a direct and proximate result of Nissan's unfair and deceptive practices, Plaintiff Hanes and the Class and California Subclass have suffered and will continue to suffer actual damages.

208. Nissan has been unjustly enriched and should be required to make restitution to Plaintiff Hanes and the Class and California Subclass pursuant to §§ 17203 and 17204 of the Business & Professions Code.

209. Plaintiff Hanes and the California Subclass, or, in the alternative, the Class, seek all remedies available pursuant to §17070, *et seq.* of the Business & Professions Code, including full compensatory damages allowable by law, attorneys' fees, costs, the repair or replacement of all Class Vehicles the refund of money paid to own or lease all Class Vehicles, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Nissan's wrongful acts and practices, and any other relief to which Plaintiff and the California Subclass may be entitled.

## SEVENTH CLAIM FOR RELIEF

### (Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*)

### On Behalf of Plaintiff Taylor Simms and the Ohio Subclass)

210. Plaintiff Taylor Simms brings this claim individually and on behalf of the Ohio Subclass.

211. Plaintiff Simms hereby incorporates the preceding allegations as if fully set forth herein.

212. Nissan is a "supplier," as defined by Ohio Rev. Code § 1345.01.

213. Plaintiff Simms is a "consumer," as defined by Ohio Rev. Code § 1345.01.

214. As a result of placing a defective product into the stream of commerce, Nissan

has breached its implied warranty in tort, which is an unfair and deceptive act as defined in Ohio Rev. Code § 1345.09(B).

215. Nissan has committed unfair and deceptive acts, in violation of Ohio's Consumer Sales Practices Act, by knowingly placing into the stream of commerce Class Vehicles equipped with defective transmissions that result in, among other problems, sudden and unexpected failure of the vehicles' power.

216. Moreover, Nissan has committed unfair, deceptive, and unconscionable acts by knowingly concealing the defect in the Class Vehicles, failing to inform Plaintiff Simms and the other Ohio Subclass Members of this defect, and in the following ways:

a. At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiff Simms and Ohio Subclass Members the known defects in the transmissions and the known risks associated therewith.

b. Thereafter, Defendant failed to disclose the defects to Plaintiff Simms and the Ohio Subclass Members, either through warnings or recall notices, and/or actively concealed from them the fact that the Class Vehicles' transmissions were defective, even though Nissan knew of such defects: (1) at the time of manufacturing, during pre-market testing; (2) at the point where NHTSA began to record complaints about the defect in 2015; or, at the latest, (3) from its own Technical Service Bulletins dating back to March 2016. Furthermore, Nissan was issuing Technical Service Bulletins regarding the CVT Defect in related vehicles for years prior, including releasing TSBs in 2013.

c. Defendant forced Plaintiff Simms and Ohio Subclass Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the defective transmissions on the Class Vehicles, despite Defendant's prior knowledge of the defects at the time of purchase.

d. Additionally, Defendant, in administering the Warranty, engaged in materially misleading deceptive acts and practices by replacing failing transmissions with

equally defective units and denying the existence of and refusing to repair the widely known problems with the transmissions without a particular code appearing in the vehicles' computers.

e. Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform as intended, represented, and warranted and that the above described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

217.    The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing, intentional, and material omissions, concealed the true defective nature of the transmissions.

218.    By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts in breach of its duty not to do so.

219.    Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries.

220.    The Ohio Attorney General has made available for public inspection prior state court decisions which have held that acts and omissions similar to kinds alleged in this Complaint, including, but not limited to, the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of Ohio's Consumer Sales Practices Act.  These cases include, but are not limited to, the following:

a. *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

b. *State ex rel. Betty D. Montgomery v. Ford Motor Co.* (OPIF #10002123);

c. *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

CLASS ACTION COMPLAINT

d. *Bellinger v. Hewlet-Packard Co.,* No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

e. *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f. *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

g. *Mark J. Cranford, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h. *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

i. *Brinkman v. Mazda Motor of America, Inc.,* (OPIF #10001427);

j. *Khouri v. Don Lewis*, (OPIF #100001995);

k. *Mosley v. Performance Mitsubishi aka Automanage*, (OPIF #10001326);

l. *Walls v. Harry Williams dba Butch's Auto Sales*, (OPIF #10001524); and,

m. *Brown v. Spears*, (OPIF #10000403).

n. *Williams v. Am. Suzuki Motor Corp.,* 2008 Ohio 3123; 2008 WL 2571584 (June 23, 2008)

221. Nissan committed these and other unfair and deceptive acts in connection with the marketing and sale of the Class Vehicles.

222. As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff Simms and Ohio Subclass Members have been damaged because they: purchased Class Vehicles they otherwise would not have purchased, paid more for Class Vehicles than they otherwise would have paid, paid for transmission diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect. Meanwhile, Nissan has sold more Class Vehicles than it otherwise could and charged inflated prices for Class Vehicles, thereby unjustly enriching itself.

223. Plaintiff Simms and Ohio Subclass Members seek restitution of the substantial sums of money they expended, including to replace their Nissan defective transmissions, which Defendant knew about prior to the sale of the Class Vehicles.

224. Plaintiff Simms and the Ohio Subclass also seek appropriate equitable relief,

including an order requiring Nissan to adequately disclose and remediate the transmission defect and enjoining Nissan from incorporating the defective transmissions into its vehicles in the future.

225.    Nissan is liable to Plaintiff Simms and the other Ohio Subclass Members for compensatory damages, injunctive/equitable relief, and attorneys' fees pursuant to Ohio Rev. Code § 1345.09.

## EIGHTH CLAIM FOR RELIEF

### (Deceptive Acts and Practices Unlawful, N.Y. Gen. Bus. Law § 349, *et seq.*)

### On Behalf of Plaintiff Sean Chambers and the New York Subclass)

226.    Plaintiff Sean Chambers brings this claim individually and on behalf of the New York Subclass.

227.    Plaintiff Chambers incorporates the preceding allegations as if fully set forth herein.

228.    Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the defects alleged.

229.    Defendant's acts are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable person purchasing the Class Vehicles. Nissan's aforementioned deceptive acts and practices are material, in part, because they concern an essential facet of the Class Vehicles' functionality and safety. The sale and distribution of the Class Vehicles in New York was a consumer-oriented act and thereby falls under the New York deceptive acts and practices statute, General Business Law Section 349.

230.    Defendant's practices, acts, policies and course of conduct violated New York's General Business Law Section 349 Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349 (McKinney), *et seq.*, in that:

        a. At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by

failing to disclose to Plaintiff Chambers and New York Subclass Members the known defects in the transmissions and the known risks associated therewith.

b. Thereafter, Defendant failed to disclose the defects to Plaintiff Chambers and the New York Subclass Members, either through warnings or recall notices, and/or actively concealed from them the fact that the Class Vehicles' transmissions were defective, despite the fact that the company knew of such defects: (1) at the time of manufacturing, during pre-market testing; (2) at the point where NHTSA began to record complaints about the defect in 2015; or, at the latest, (3) from its own Technical Service Bulletins dating back to March 2016. Furthermore, Nissan was issuing Technical Service Bulletins regarding the CVT Defect in related vehicles for years prior, including releasing TSBs in 2013.

c. Defendant forced Plaintiff Chambers and the New York Subclass Members to expend sums of money at its dealerships to repair and/or replace the defective transmissions, despite the fact that Defendant had prior knowledge of the defects at the time of purchase.

d. Additionally, Defendant, in administering the Warranty, engaged in materially misleading deceptive acts and practices by replacing failing transmissions with equally defective units and denying the existence of and refusing to repair the widely known problems with the transmissions without a particular code appearing in the vehicles' computers.

e. Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform as intended, represented, and warranted and that the above described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

231. The aforementioned conduct is and was deceptive and false and constitutes an

unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing, intentional, and material omissions, concealed the true, defective nature of the transmissions in the Class Vehicles.

232. By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

233. Defendant's misrepresentations of fact and/or material omissions caused injury and actual damages to Plaintiff Chambers and the Class and New York Class Members.

234. Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries. As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff Chambers and the Class and New York Class Members have been damaged as alleged herein and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

235. Plaintiff Chambers and New York Subclass Members, or, alternatively, the Class Members, seek restitution of the substantial sums of money they expended to repair and replace the defective transmissions in the Class Vehicles, which Defendant knew about prior to the sale of the Class Vehicles and further seek statutory damages or actual damages, whichever is greater for their injuries.

236. Plaintiff Chambers and New York Subclass Members, or, alternatively, the Class Members, also seek appropriate equitable relief, including an order requiring Nissan to adequately disclose and remediate the transmission defect and an order enjoining Nissan from incorporating the defective transmissions into its vehicles in the future.

CLASS ACTION COMPLAINT

## NINTH CLAIM FOR RELIEF

### (Illinois Uniform Deceptive Trade Practices Act

### 815 ILCA 510/1, *et seq.*)

### On Behalf of Plaintiff Love and the Illinois Subclass)

237.  Plaintiff Marueen Love brings this claim individually and on behalf of the Illinois Subclass.

238.  Plaintiff Love hereby incorporates the preceding allegations as if fully set forth herein.

239.  Plaintiff Love is a "person" as defined by 815 ILCS 510/1.

240.  Defendant. is a "person" as defined by 815 ILCS 510/1.

241.  By representing that the Class Vehicles had characteristics and benefits that they do not have and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another, Nissan violated 815 ILCS 510/1(a)(5) & (a)(7).

242.  Nissan misrepresented that the Class Vehicles were free from defects in their transmissions.

243.  Nissan knew of the defects in the transmissions of the Class Vehicles, including in Plaintiff Love's vehicle, at the time the vehicles were purchased.

244.  Nissan concealed the defects in the Class Vehicles from Plaintiff Love and other members of the Illinois Subclass.

245.  Had Plaintiff Love and Illinois Subclass Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

246.  As a result of Nissan's conduct, Plaintiff Love and Illinois Subclass Members were harmed and suffered actual damages in that the Class Vehicles experienced and may continue to experience the aforementioned transmission failures.

247.  As a direct and proximate result of Nissan's unfair or deceptive acts and

practices, Plaintiff Love and Illinois Subclass Members suffered and will continue to suffer actual damages.

248.    Plaintiff Love and Illinois Subclass Members are entitled to injunctive relief, attorneys' fees and costs, and any other relief provided by law.

## TENTH CLAIM FOR RELIEF

### (Illinois' Consumer Fraud and Deceptive Business Practices Act

### 815 ILCS 505/1, et seq.)

### On Behalf of Plaintiff Love and the Illinois Subclass)

249.    Plaintiff Marueen Love brings this claim individually and on behalf of the Illinois Subclass.

250.    Plaintiff Love hereby incorporates the preceding allegations as if fully set forth herein.

251.    Plaintiff Love is a "person" as defined by 815 ILCS 505/1(c).

252.    Defendant is a "person" as defined by 815 ILCS 505/1(c).

253.    By offering the Class Vehicles for sale through its authorized dealers, selling the Class Vehicles, and distributing the Class Vehicles, Nissan engaged in "trade" and "commerce" as defined by 815 ILCS 505/1(f).

254.    By misrepresenting that the Class Vehicles did not contain a defect and that Nissan could repair the defect in parts covered under the Warranty, omitting the existence of a transmission defect in Class Vehicles at the time of purchase and when owners brought their vehicles in for repair due to the transmission failures, and failing to advise owners of Class Vehicles of the transmission defect post-purchase, Nissan engaged in unfair and deceptive practices in the conduct of trade or commerce in violation of 815 ILCS 505/2.

255.    Nissan knew of the defects in the transmissions of the Class Vehicles, including in Plaintiff Love's vehicle, at the time the vehicles were purchased.

256.    Nissan intended for Plaintiff Love, the Class, and the  Illinois Subclass to rely

on its misrepresentations and omissions and purchase the Class Vehicles under the assumption that they were safe to operate and did not contain a defect in parts covered under the Warranty that Nissan could not fix.

257.    Had Plaintiff Love, the Class, and the Illinois Subclass Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

258.    As a result of Nissan's conduct, Plaintiff Love, the Class, and the Illinois Subclass Members were harmed and suffered actual damages in that the Class Vehicles experienced and may continue to experience the aforementioned transmission failures.

259.    As a direct and proximate result of Nissan's unfair or deceptive acts or practices, Plaintiff Love, the Class, and Illinois Subclass Members suffered and will continue to suffer actual damages.

260.    Plaintiff Love, the Class, and Illinois Subclass Members are entitled to actual damages, punitive damages, injunctive relief, attorneys' fees and costs, and any other relief provided by law.

**ELEVENTH CLAIM FOR RELIEF**

**(Violations of the Alabama Deceptive Trade Practices Act**

**Ala. Code § 8-19-1, et seq**

**On behalf of the Alabama Subclass)**

261.    Plaintiff Carl Kirksey brings this claim individually and on behalf of the members of the Alabama Sub-Class.

262.    Plaintiff Kirksey hereby incorporates the preceding paragraphs as if fully set forth herein.

263.    Defendant, Plaintiff Kirksey, and the Alabama Sub-Class Members are "persons" within the meaning of the Alabama Deceptive Trade Practices Act ("Alabama

DTPA") Ala. Code § 8-19-3(5).

264.    Plaintiff Kirksey and the Alabama Sub-Class Members "persons" within the meaning of Ala. Code § 8-19-3(2).

265.    The Class Vehicles are "goods" within the meaning of Ala. Code § 8- 19-3(3).

266.    Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

267.    The Alabama DTPA declares several specific actions to be unlawful, including: "Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

268.    Defendant participated in unfair or deceptive trade practices that violated the Alabama DTPA as alleged throughout the Complaint. By promoting and selling or leasing Class Vehicles it knew were defective; failing to disclose the CVT Defect; failing to make repairs or making repairs and providing replacements that caused Plaintiff and the Alabama Sub-Class members to experience repeated instances of failure, rendering the New Vehicle Limited Warranty useless, minimizing the scope and severity of the problems with the Class Vehicles, refusing to acknowledge that they are defective, and failing to provide adequate relief to consumers, Defendant knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Nissan systematically concealed, suppressed, or omitted material facts relating to the Class Vehicles and CVT Defect in the course of its business.

269.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

270.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

CLASS ACTION COMPLAINT

271. Defendant knew that the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

272. Defendant knew or should have known that its conduct violated the Alabama DTPA.

273. Plaintiff and the Alabama Sub-Class Members reasonably relied on Defendant's omissions of material facts when purchasing the Class Vehicles.

274. Had Plaintiff and the Alabama Sub-Class Members known that the Class Vehicles would exhibit the CVT Defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiff and the Alabama Sub-Class Members did not receive the benefit of their bargain as a result of Defendant's misconduct.

275. Plaintiff and the Alabama Sub-Class Members suffered injury in fact to a legally protected interest. As a result of Defendant's conduct, Plaintiff and the Alabama Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

276. As a result of Defendant's conduct, Plaintiff and the Alabama Sub-Class Members were harmed and suffered actual damages as a result of Defendant's omissions with regard to their Class Vehicles' Uconnect systems because they purchased vehicles which do not perform as advertised.

277. As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and the Alabama Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

278. On August 16, 2022, Plaintiff made a written demand on Defendant for relief for himself and the Alabama Sub-Class Members. Plaintiff's demand met any applicable requirements of Ala. Code § 8-19-10 (e).

///

CLASS ACTION COMPLAINT

279.    Plaintiff and the Alabama Sub-Class Members seek an order enjoining FCA's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the under the Alabama DTPA.

## TWELFTH CLAIM FOR RELIEF

### (Violations of the Arizona Consumer Fraud Act

### Ariz. Rev. Stat. §§ 44-152, *et seq.*)

### On behalf of the Arizona Subclass)

280.    Plaintiff Abigail Busler brings this claim on individually and on behalf of the Arizona Sub-Class.

281.    Plaintiff Busler incorporates by reference each and every preceding paragraph as though fully set forth herein.

282.    Arizona's Consumer Fraud Act ("ACFA") makes it unlawful for a seller to engage in any deception, deceptive or unfair act or practice, false statement, false pretense, false promise, misrepresentation, concealment or omission of any material fact, by a seller or advertiser in connection with the same or advertisement of any merchandise.

283.    Defendant, Plaintiff Busler, and the members of the Arizona Sub-Class are all "persons" and the Vehicles are "merchandise" within the meaning of the ACFA §§ 44-1521 and 44-1522.

284.    Defendant engaged in deception and made misrepresentations to Plaintiff Busler and members of the Arizona Sub-Class by marketing and advertising the Vehicles as having superior performance and control when, in fact, the Vehicles suffer from the Defect, and suppressed or omitted material facts in connection with the sale and/or lease or advertisement of the Vehicles by failing to inform Plaintiff Busler and the members of the Arizona Sub-Class about the CVT Defect.

285.    Plaintiff Busler and members of the Arizona Sub-Class, in purchasing and using the Vehicles, did reasonably act in response to Defendant's above representations or

would have considered the omitted facts set forth herein material to their purchasing decision.

286. The representations regarding the Vehicles were material to Plaintiff Busler and members of the Arizona Sub-Class. Defendant intended that Plaintiff Busler and members of the Arizona Sub-Class would rely on these representations and they did, in fact, rely on the representations.

287. Plaintiff Busler and members of the Arizona Sub-Class have suffered damages by the wrongful acts and practices of Defendant that are in violation of ACFA § 44-1522.

288. The deceptive conduct described herein is ongoing and continues to this date. Plaintiff Busler and members of the Arizona Sub-Class, therefore, are entitled to relief described below as appropriate for this cause of action.

## THIRTEENTH CLAIM FOR RELIEF

### (Violations of Georgia's Fair Business Practices Act

### Ga. Code Ann. § 10-1-390, *et seq.*)

### On behalf of the Georgia Subclass)

289. Plaintiff Chantel Young brings this claim individually and on behalf of the Georgia Sub-Class.

290. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

291. Georgia's Fair Business Practices Act ("GFBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code Ann. § 10-1-393(a).

292. Unfair or deceptive acts or practices are defined to include, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, qualify, or grade . . . if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." Ga. Code Ann. § 10-1-393(b).

Case 3:22-cv-00769   Document 1   Filed 09/30/22   Page 55 of 66 PageID #: 55
CLASS ACTION COMPLAINT

293. In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. By failing to disclose and actively concealing that the Class Vehicles contained the Defect, by marketing its Class Vehicles as safe and of high quality, and by presenting itself as a reputable manufacturer and distributor that valued safety and stood behind its vehicles after they were sold, Defendant engaged in unfair business practices as defined by the GFBPA.

294. Defendant failed to disclose information about the CVT Defect. Further, Defendant knew, or should have known, that the CVT Defect could increase the likelihood of collisions or other accidents, putting vehicle operators, passengers and other motorists at risk for injury. Defendant deliberately concealed and failed to disclose this material information to ensure that consumers would purchase the Class Vehicles.

295. Instead, Defendant marketed the Class Vehicles as being safe and reliable transportation, when, if fact, they are not.

296. Defendant violated the GFBPA by: (1) representing the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and (3) advertising the Class Vehicles with the intent not to sell them as advertised.

297. Defendant engaged in misleading, false, unfair, or deceptive practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of materials facts concerning the Class Vehicles' CVT Defect and corresponding safety risk in connection with the sale and/or advertisement of Class Vehicles. This includes denying the existence of the CVT Defect to consumers, even when investigating it in the Class Vehicles, failing to provide repairs under the express warranty provided with the sale of the Class Vehicles for the CVT Defect, and by presenting itself as a reputable auto seller that valued safety and stood behind its vehicles after they were sold.

CLASS ACTION COMPLAINT

298.    Defendant fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Young and members of the Georgia Sub-Class the characteristics of Class Vehicles with respect to materials, manufacture, safety, and reliability.

299.    Defendant intended that the Plaintiff Young and members of the Georgia Sub-Class would, in the course of their decision to expend money in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of Class Vehicle with respect to materials, workmanship, manufacture and information in the owner's manuals.

300.    Information regarding the CVT Defect as described in this Complaint is material to consumers in that, *inter alia*, the CVT Defect can cause unpredictable acceleration, delayed acceleration, and loss of power, this contributing to an increase risk of collisions and injury.

301.    If Defendant had not concealed the CVT Defect from Plaintiff Young and members of the Georgia Sub-Class within the express warranty period, the CVT Defect would have been repaired without cost to purchasers as promised under the original warranty.

302.    Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles ability to provide safe and reliable transportation with the intent to mislead Plaintiff Young and the Georgia Sub-Class.

303.    Defendant knew or should have known that their conduct violated the GFBPA.

304.    Defendant owed Plaintiff Young and the Georgia Sub-Class a duty to disclose the existence of the CVT Defect and corresponding safety risk because Defendant:

      a.    Possessed exclusive knowledge that the Class Vehicles were being manufactured, distributed, and sold with the CVT Defect;

      b.    Intentionally concealed the existence of the CVT Defect from Plaintiff Young and the Georgia Sub-Class; and

      c.    Made incomplete and misleading representations about the Class Vehicles' ability to provide safe, reliable transportation and to accelerate properly while

purposefully withholding material facts that contradicted these representations.

305.    As a proximate and direct result of Defendant's unfair and deceptive trade practices, Plaintiff Young and members of the Georgia Sub-Class purchased or leased Class Vehicles and suffered an ascertainable loss and financial harm in the form of actual damages in the amount of overpaying for defective Class Vehicles, and the diminution of value for the Class Vehicles and other substantial monetary damages and inconvenience.

306.    Defendant had an ongoing duty to all of its customers to refrain from unfair and deceptive practices under the GFBPA.  Defendant's violations present a continuing risk to Plaintiff Young as well as to the general public. Defendant's unlawful acts and practices complained of herein after the public interest.

307.    Pursuant to statute, Plaintiff Young provided notice of their claims by letter dated August 16, 2022.  Plaintiff Young seeks all damages and relief to which she and the Georgia Sub-Class are entitled because Defendant failed to remedy its unlawful conduct within the requisite time period.

308.    Plaintiff Young and the Georgia Sub-Class seek monetary relief against Defendant in the amount of damages, exemplary damages for intentional violations, injunctive relief, attorneys' fees, and any other just and proper relief available under Ga. Code. Ann § 10-1-399(a).

///

CLASS ACTION COMPLAINT

# FOURTEENTH CLAIM FOR RELIEF

## (Violations of Georgia's Uniform Deceptive Trade Practices Act

## Ga. Code Ann. § 10-1-370, *et seq.*)

### On behalf of the Georgia Subclass)

309.    Plaintiff Chantel Young brings this claim individually and on behalf of the Georgia Sub-Class.

310.    Plaintiff Young incorporates by reference the preceding paragraphs as though fully set forth herein.

311.    The Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a). Defendant engaged in unfair and deceptive practices that violated the GFBPA as described above.

312.    Defendant, Plaintiff Young, and the members of the Georgia Sub-Class are "persons" within the meaning of the GUDTPA, Ga. Code. Ann. § 10-1-371(5).

313.    Defendant participated in misleading, false, or deceptive practices that violated the GUDTPA. By failing to disclose and actively concealing that the Class Vehicles contained the CVT Defect, by marketing their Class Vehicles as safe and reliable, and by presenting itself as a reputable auto seller that valued safety and stood behind its vehicles after they were sold, Defendant engaged in deceptive business practices prohibited by the GUDTPA.

314.    In the course of its business, Defendant willfully failed to disclose and actively concealed the CVT Defect discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

CLASS ACTION COMPLAINT

315. Defendant has known for years about the CVT Defect in the Class Vehicles but failed to disclose that the Class Vehicles contained the Defect. Defendant also knew it was distributing and selling Class Vehicles that did not perform as advertised and jeopardized the safety of the vehicle's occupants but failed to disclose this information to Plaintiff Young and members of the Georgia Sub-Class. Defendant failed to disclose information about the propensity of the CVT Defect to cause delayed acceleration, loss of power, and the other CVT Defect's symptoms. Further, Defendant knew, or should have known, that such symptoms could cause the Class Vehicles to become involved in collisions or other accidents, putting vehicle operators, passengers and other motorists at risk for injury. Defendant deliberately concealed and failed to disclose this material information to ensure that consumers would purchase the Class Vehicles and spend money on useless remedies and repairs.

316. Defendant committed unconscionable, deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of materials facts concerning the Class Vehicles' CVT Defect and corresponding safety risk in connection with the sale and/or advertisement of Class Vehicles.

317. Defendant fraudulently, intentionally, negligently and/or recklessly misrepresented to the Plaintiff Young and members of the Georgia Sub-Class the characteristics of Class Vehicles with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.

318. Defendant intended that Plaintiff Young and members of the Georgia Sub-Class would, in the course of their decision to expend money in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of Class Vehicle with respect to materials, workmanship, design, manufacture and information in the owner's manuals.

319. Information regarding the Defect as described in this Complaint is material to consumers because, *inter alia,* the defect results in exorbitant repair or replacement costs, can

cause unpredictable and delayed acceleration, judder, vibration, transmission failure, and other CVT Defect symptoms, and poses a safety risk.

320. If Defendant had not concealed the defect from Plaintiff Young and members of the Georgia Sub-Class within the express warranty period, the CVT Defect would have been repaired without cost to purchasers as promised under the original warranty.

321. Defendant violated the GUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles were defectively designed and/or manufactured.

322. Defendant violated the GUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles contained defects and would require replacement of expensive internal powertrain components.

323. As a proximate and direct result of Defendant's unfair and deceptive trade practices, Plaintiff Young and members of the Georgia Sub-Class purchased or leased Class Vehicles and suffered an ascertainable loss and financial harm.

324. Plaintiff Young and members of the Georgia Sub-Class experienced ascertainable losses in the form of actual damages in the amount of the cost to repair the Defect, replace the essential powertrain system and/or the Class Vehicles, diminution of Class Vehicle resale value, increased repair and maintenance costs and other substantial monetary damages and inconvenience.

325. Plaintiff Young provided notice to Defendant of her claims by letter dated August 16, 2022.

326. Plaintiff Young and the Georgia Sub-Class seek monetary relief against Defendant in the amount of actual damages, injunctive relief, attorneys' fees, and any other just and proper relief available under Ga. Code. Ann § 10-1-373.

## FIFTEENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

### On behalf of the Class, or Alternatively, the California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia Subclasses and their Named Representatives

327. Plaintiffs bring this claim individually and on behalf of the Class or, in the alternative, the California, Ohio, New York, Arizona, Illinois, Alabama, and Georgia Subclasses in the alternative to the warranty related claims.

328. As a direct and proximate result of Nissan's failure to disclose known defects, Nissan has profited through the sale and lease of the Class Vehicles. Although these vehicles are purchased through Nissan's agents, the money from the vehicle sales flows directly back to Nissan.

329. Additionally, as a direct and proximate result of Nissan's failure to disclose known defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Nissan.

330. Nissan has been unjustly enriched due to the known defects in the Class Vehicles through the use money paid that earned interest or otherwise added to Nissan's profits when said money should have remained with Plaintiffs and Class Members.

331. As a result of the Nissan's unjust enrichment, Plaintiffs and Class Members have suffered damages.

### RELIEF REQUESTED

332. Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Nissan, as follows:

(a)     An order certifying the proposed Class and Subclasses, designating Plaintiffs as named representative of the Class, and designating the

undersigned as Class Counsel;

(a)    A declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the CVT, including the need for periodic maintenance;

(b)    An order enjoining Nissan from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Nissan to issue a voluntary recall for the Class Vehicles pursuant to. 49 U.S.C. § 30118(a); compelling Nissan to remove, repair, and/or replace the Class Vehicles' defective CVT and/or its components with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Nissan from selling the Class Vehicles with the misleading information; and/or compelling Nissan to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(c)    A declaration requiring Nissan to comply with the various provisions of the Song-Beverly Act and all other causes of action alleged herein and to make all the required disclosures;

(d)    An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e)    Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

(f)    Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(g)      A declaration that Nissan must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

(h)      An award of attorneys' fees and costs, as allowed by law;

(i)      An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

(j)      An award of pre-judgment and post-judgment interest, as provided by law;

(k)      Leave to amend the Complaint to conform to the evidence produced at trial; and

(l)      Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

229.      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury of any and all issues in this action so triable.

Respectfully submitted,

s/Gregory F. Coleman

Gregory F. Coleman
Adam A. Edwards
William A. Ladnier
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: 865-247-0080
Fax: 856-522-0049
gcoleman@milberg.com
aedwards@milberg.com
wladnier@milberg.com

Mitchell M. Breit*
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
405 East 50th Street
New York, NY 10022
Tel: 212-594-5300
mbreit@milberg.com

Tarek H. Zohdy*
Cody R. Padgett*
Laura H. Goolsby*
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396
Tarek.Zohdy@capstonelawyers.com
Cody.Padgett@capstonelawyers.com
Laura.Goolsby@capstonelawyers.com


Russell D. Paul*
Lawrence Deutsch*
Jeffrey L. Osterwise*
BERGER & MONTAGUE, P.C
1818 Market Street
Philadelphia, PA  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
rpaul@bm.net
ldeutsch@bm.ne
josterwise@bm.net


Melissa S. Weiner*
PEARSON, SIMON & WARSHAW, LLP
328 Barry Avenue South, Suite 200
Wayzata, MN 55319
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com


James C. Shah*
Natalie Finkelman Bennett*
 MILLER
& SHAH, LLP
1845 Walnut St., Suite 806
Philadelphia PA 19103
Telephone: 6108919880
nfinkelman@millershah.com
jcshah@millershah.com


Norberto J. Cisneros*
Barbara M. McDonald**
MADDOX & CISNEROS, LLP
1210 South Valley View Blvd., Suite 202
Las Vegas, Nevada 89102
Telephone: (702)366-1900
Facsimile: (702) 366-1999
ncisneros@mic-law.com

Case 3:22-cv-00769   Document 1   Filed 09/30/22   Page 65 of 66 PageID #: 65
CLASS ACTION COMPLAINT

*Attorneys for Plaintiffs and the Class and the Subclasses*

*Motions for pro hac vice admission forthcoming*

CLASS ACTION COMPLAINT